UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:     AKHTER HUSAIN and                                  Case No. 06-32952-KRH
           FARAH HUSAIN,                                      Chapter 7
                Debtors

## MEMORANDUM OPINION

Now before the Court are two reaffirmation agreements submitted for approval by the Debtors, Akhter and Farah Husain (the "Debtors"). For reasons set forth below, the Court finds that the agreements are not in the best interests of the Debtors, and therefore, the Court declines to approve the two reaffirmation agreements.

FACTUAL BACKGROUND

The Debtors filed their joint chapter 7 bankruptcy case on October 24, 2006. Throughout these proceedings, the Debtors have been ably represented by competent bankruptcy counsel. The meeting of creditors pursuant to § 341 of the Bankruptcy Code was held on November 20, 2006. On December 8, 2006, the chapter 7 trustee filed a report of no distribution based upon her determination that there were no assets to administer for the benefit of unsecured creditors.

The Debtors' schedules and statement of affairs initially indicated that they intended to redeem their two vehicles. However, the Debtors instead promptly undertook action to reaffirm their obligations with respect to the two vehicles. On December 26, 2006, Debtor Akhter Husain filed with the Court a reaffirmation agreement with Branch Banking and Trust Company ("the BB&T Agreement") and a motion for approval of that agreement. In the BB&T Agreement, Debtor Akhter Husain agreed to reaffirm debt to BB&T in the amount of $12,302.03, at a simple interest rate of 14.79%. Securing this debt was a 2004 Toyota Corolla automobile, originally purchased for $13,049.00, and valued upon the Debtors' schedules at $10,375.00. Under the

BB&T Agreement, Debtor Akhter Husain agreed to make 54 monthly payments in the amount of $310.25 each.

In addition, on January 2, 2007, Debtor Akhter Husain filed with the Court a reaffirmation agreement with Toyota Motor Credit Corporation ("the Toyota Agreement") and a motion for approval of that agreement. In the Toyota Agreement, Debtor Akhter Husain agreed to reaffirm debt to Toyota Motor Credit Corporation in the amount of $15,438.92, at a simple interest rate of 15.6%. Securing this debt was a 2003 Toyota Avalon automobile, originally purchased for $26,617.90 and valued upon the Debtors' schedules at $8,415.00. Under the Toyota Agreement, Debtor Akhter Husain agreed to make 61 monthly payments in the amount of $388.15 each.

Although the Debtors were represented by counsel throughout their bankruptcy case, neither the BB&T Agreement nor the Toyota Agreement (together the "Agreement(s)") filed with the Court contained a certification by the attorney for the Debtors in accordance with 11 U.S.C.A. § 524(c)(3)[1] that the Agreement(s) did not impose an undue hardship on the Debtors. In Part D of each Agreement, Debtor Akhter Husain represented to the Court as follows:

> I believe that this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $3,145.83 and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $7,148.87, leaving $ [4,003.04] to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here. I expect to close the gap between my income and expenses with an expected raise and through working more hours.

---

[1] The changes to the Bankruptcy Code affected by BAPCPA have not yet been codified into the official United States Code. Since this opinion addresses primarily sections of the Bankruptcy Code affected by BAPCPA, all references to the Bankruptcy Code are to the United States Code Annotated 2004, as amended by West Supp. 2006.

The Bankruptcy Code contemplates that counsel's failure to certify a reaffirmation agreement terminates further consideration of the client's ability to reaffirm the debt. Undeterred, the Debtors proceeded on the assumption that their counsel's refusal to execute part C of the Agreement(s) rendered the Debtors "not represented by an attorney during the course of negotiating" the Agreement(s), and they requested the Court to approve the Agreement(s) under 11 U.S.C.A. § 524(c)(6) absent their counsel's certification. On January 31, 2007, the Court conducted a hearing pursuant to 11 U.S.C.A. § 524(d) on the Debtors' request that the Agreements be approved (the "Hearing"). Due and proper notice of the Hearing was served upon Debtors, Debtors' counsel, and each of the affected creditors.

CONCLUSIONS OF LAW

Section 524 of the Bankruptcy Code allows a debtor to enter into an agreement to reaffirm a debt that would be otherwise dischargeable in the debtor's bankruptcy case. In order to enter into such a reaffirmation, the debtor and the creditor must comply with a prescribed procedure which is designed to ensure that the debtor is well informed and is willingly assuming an obligation that would otherwise have been discharged. The debtor's attorney is required to certify, as part of that procedure, that the agreement does not impose an undue hardship on the debtor and that the debtor has been fully advised of the legal effect and consequences of the agreement. 11 U.S.C.A. § 524(c)(3). If the debtor is not represented by an attorney, then the debtor must certify to the court that the agreement does not impose an undue hardship and that the agreement is in the debtor's best interest. The court then may approve the agreement. 11 U.S.C.A. § 524(c)(6)(A).

Strict compliance with the provisions of § 524 of the Bankruptcy Code has always been a prerequisite to enforce a reaffirmation agreement. Reaffirmation agreements that fail to comply

3

fully have been held void and unenforceable. *See, e.g., In re Hovestadt*, 193 B.R. 382, 386 (Bankr. D. Mass. 1996). Strict compliance was designed to protect the honest but unfortunate debtor's fresh start. *In re Vargas*, 257 B.R. 157, 166 n.12 (Bankr. D.N.J. 2001). Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA),[2] § 524(c) of the Bankruptcy Code provided the checklist of requirements for an enforceable reaffirmation agreement.[3] Counsel for the reaffirming debtor was obligated to investigate and explain the relevant facts about the reaffirmation to the client. *See In Re Bruzzese*, 214 B.R. 444, 451 ( Bankr. E.D.N.Y. 1997) (debtor's attorney sanctioned for failing to investigate and explain to the debtor the relevant facts about the reaffirmation agreement).

For a reaffirmation agreement to be enforceable following enactment of BAPCPA, more is required than just an executed agreement coupled with counsel's certification that the debtor understands the agreement and that it does not impose an undue hardship. The Debtor must now be provided with the detailed disclosures that are set forth in 11 U.S.C.A. § 524(k). The addition of § 524(k) into the Bankruptcy Code is considered one of the primary protections that Congress afforded to chapter 7 debtors when it enacted BAPCPA. *In re Quintero*, No. 06-40163, 2006 WL 1351623 (Bankr. N.D. Cal. May 17, 2006). The addition was designed to provide an extra measure of consumer protection over and above that previously provided in the Bankruptcy Code.[4]

Section 524(m) of the Bankruptcy Code conditions even further the debtor's ability to enter into a binding reaffirmation agreement by establishing a presumption that any reaffirmation

---

[2] Pub. L. No. 109-8, 119 Stat. 23 (2005).

[3] David B. Wheeler & Douglas E. Wedge, A Fully Informed Decision: Reaffirmation, Disclosure and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L. J. 789, 790 (2005).

[4] H.R. Rep. No. 109-31, at 57 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 127.

4

agreement imposes an undue hardship on the debtor "if the debtor's monthly income . . . less the debtor's monthly expenses is less than the scheduled payments on the reaffirmed debt." The debtor may overcome the presumption by submitting to the court, in writing, an explanation of the source of the additional funds that will be needed to comply with the terms of the proposed reaffirmation agreement. 11 U.S.C.A. § 524(m). If the court is satisfied that the debtor is able to overcome the presumption of undue hardship, it may then approve the reaffirmation agreement. *Id*.

Congress did not anticipate the factual scenario presented in the case at bar when it enacted the statutory framework for enforcement of reaffirmation agreements. The new provisions of BAPCPA contemplate that either (1) a debtor presenting a reaffirmation agreement to the court was represented by counsel throughout the negotiation of the agreement, or (2) the debtor was totally unrepresented by counsel throughout the negotiation.

In this case, however, the Debtors were represented by counsel who found himself in a situation where he was unable to certify to the Court in good conscience that an "undue hardship presumption" did not apply to his clients. This obviously placed Debtors' counsel in an extremely awkward situation.[5] Counsel was forced to choose between the roles of advocate and advisor. Counsel ultimately was not able to abandon his clients and their sincere wishes to reaffirm their debt in spite of the "undue hardship" their decision would impose upon them. Yet, counsel could not agree with his clients that the hardship did not exist.

The Court is cognizant that often, as is the case here, debtors desperately desire to retain their vehicles and that they will continue making their regular payments because transportation is

---

[5] At the hearing on the reaffirmation Agreements, the Court asked counsel for Debtors whether he thought reaffirmation would constitute an undue hardship for Debtors. Debtors' counsel asked the Court to permit him to simply stand by the fact that he had not signed the Part C certification without requiring him to further weigh in on the subject. The Court granted this request.

such a crucial element in their search for a "fresh start." If a reaffirmation agreement is approved, however, the debtors will be exposed to a potential deficiency judgment which would be avoided if the reaffirmation agreement were not enforceable.

Counsel resolved the dilemma by declining to execute Part C of the Agreements but by advocating, nevertheless, at the hearing the Debtors' desire that the Agreements be approved as enforceable for the sole reason that the Debtors needed to be able to keep their cars. This position places the Court in a quandary. Is counsel's decision to not execute the part C certification of the Agreement(s) equivalent to the Debtors' not being represented by an attorney during the course of negotiating the Agreement(s), thus permitting the Court to conduct a hearing pursuant to the provisions of 11 U.S.C.A. § 524(d) and (c)(6)? Or on the other hand, does counsel's refusal to sign the "No undue hardship" certification put an end to any further inquiry and, in and of itself, terminate the reaffirmation process?

Even if counsel had executed Part C of the Agreements, § 524(m) of the Bankruptcy Code, as noted above, would have required further Court scrutiny. That section raises a rebuttable presumption that a reaffirmation agreement imposes an undue hardship on the debtor if the debtor's monthly income, less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of the agreement, as required by § 524(k)(6)(A) of the Bankruptcy Code, is less than the scheduled payments on the reaffirmed debt. 11 U.S.C.A. § 524(m). Here, the Debtors' income after expenses is not adequate to make the monthly payments required by the Agreements.[6] Thus, the presumption of undue hardship applies in this case. Section 521(m) requires that the presumption "shall be reviewed by the court." As

---

[6] The Debtors' schedules I and J filed in this case and their statement of income included in Part D of the reaffirmation Agreements each indicate that their monthly income is exceeded by their monthly expenses (including the scheduled payments on the subject debts to be reaffirmed) by $4,003.04.

§ 521(m) further provides that the presumption of undue hardship may be rebutted "to the satisfaction of the court," this Court has the discretion to look beyond the raw numbers in determining whether the reaffirmation agreement should be approved.

The Federal Rules of Evidence provide that a presumption imposes on the party against whom it is directed the burden of going forward with evidence to meet the presumption. Fed. R. Evid. 301. In this case, the Debtors can rebut the presumption (i) by providing an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of the reaffirmation Agreements (ii) by demonstrating that the value of the asset exceeds the amount of the debt to be assumed, or (iii) by proving to the satisfaction of the Court that the Debtors' need for the vehicles outweighs the Court's consideration of the sources for those additional funds or the undersecured nature of the obligation the Debtors desire to assume.

The evidence advanced by the Debtors to rebut the presumption on the first point included the statement of Debtor Akhter Husain that "I expect to close the gap between my income and expenses with an expected raise and through working more hours." Counsel for the Debtors proffered the testimony of the Debtors (who were both present at the Hearing) that Mr. Husain was slated to begin a job in February of 2007 which the Debtors expected would bring in an additional $1,000.00 per month in monthly net income. As this projected additional income would still leave the Debtors with a deficit of expenses over income of approximately $3,000.00 per month, the Court finds that it is insufficient to overcome the § 524(m) presumption of undue hardship.

The Debtors focused primarily on the third point, raising significant concerns that the automatic stay would abruptly end and no longer continue to protect them from repossession of their vehicles if the Agreements were not approved by the Court. While the Debtors were

7

current in the payments due under the notes held by the two secured creditors and while the Debtors were also maintaining the required insurance on the collateral post-petition, they worried that the inclusion of *ipso facto* clauses[7] in the Agreements could nonetheless result in the loss of their vehicles. The basis for the Debtors' concern is BAPCPA's addition of new § 521(d) into the Bankruptcy Code. That section provides in part that the Bankruptcy Code no longer prevents the enforcement of *ipso facto* clauses in consumer loan agreements secured by personal property. 11 U.S.C.A. § 521(d). The Debtors argued that their need to keep their vehicles, despite the existence of any *ipso facto* clauses in their contracts with their secured creditors, trumped any hardship that reaffirmation would impose upon them.

As the loss of the vehicles would certainly be a great disadvantage to the Debtors as they begin to restructure their lives and finances post-bankruptcy, the Court undertook thorough consideration of this concern.[8] The Court concludes, however, for the reasons set forth below, that retention of the vehicles cannot be a reason for the Court to approve the unduly burdensome reaffirmation Agreements.

The general rule is that an *ipso facto* clause in an installment loan contract is "unenforceable as a matter of law." *Home Owners Funding Corp. v. Belanger (In re Belanger)*, 962 F.2d 345, 348 (4th Cir. 1992); *Riggs Nat'l Bank v. Perry*, 729 F.2d 982 (4th Cir. 1984). However, BAPCPA carved out an exception to this rule by adding 11 U.S.C.A. § 521(d).[9] Under

---

[7] *Ipso facto* clauses are contractual provisions that declare a debtor in default if he or she becomes a debtor in a bankruptcy case.

[8] The Debtors argue that if they are not allowed to enter into these Agreements, they may lose their vehicles and be greatly impaired in their ability to begin their post-bankruptcy lives with the fresh start contemplated by the Bankruptcy Code. The Court notes that the vehicles at issue are not luxury vehicles and that the debts they secure are not unnecessarily large. The Debtors in good faith are motivated to keep these vehicles to begin their new lives.

[9] BAPCPA added § 521(d) specifically to address such clauses: "If the debtor fails timely to take the action specified in . . . paragraphs (1) and (2) of section 362(h) . . . nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such

§ 521(d), an *ipso facto* clause now may be made operative if the debtor fails to comply with the provisions of § 362(h)(1) and (2) of the Bankruptcy Code. 11 U.S.C.A. § 521(d).[10]

In this case, in order to satisfy the provisions of 362(h)(1) and (2) and thus avoid § 521(d)'s consequence of having the *ipso facto* clause become operative, the Debtors must have timely filed a statement of intent to reaffirm or redeem and timely taken the actions specified in that statement. 11 U.S.C.A. § 362(h)(1).[11] Section 362(h) provides that the statement of intent is deemed to be timely if it satisfies the requirements of § 521(a)(2).[12] If performance is not timely, then the automatic stay of § 362(a) will no longer be in effect with respect to the property securing the claim. In addition, the property will no longer be property of the estate. No dispute has been raised in this case to the timely nature of the Debtors' filing of their Statement of Intent or to the timely nature of their subsequent performance.[13]

The Debtors' timely act of entering into mutually satisfactory reaffirmation Agreements with their creditors must be viewed as sufficient to satisfy the performance standards of § 521(a). Those performance requirements should not be read as a mandate for debtors to entirely

---

lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor." 11 U.S.C.A. § 521(d).

[10] Under § 521(d), an *ipso facto* clause may also be made operative if the debtor fails to comply with the provisions of § 521(a)(6) of the Bankruptcy Code. 11 U.S.C.A. § 521(d). In this case, the provisions of § 521(a)(6) do not pertain, since they refer only to property "as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property . . . ." The creditors do not have "allowed claims" in this no-asset bankruptcy case because they have not filed proofs of claim under § 501 of the Bankruptcy Code. Section 502 of the Bankruptcy Code provides that a claim is allowed if a proof of claim is filed without objection.

[11] The provisions of § 362(h)(2), requiring a separate motion by the trustee, do not pertain in this case.

[12] Section 521(a)(2) requires that (1) the statement of intent be filed within 30 days after the date of the filing of the petition or on or before the date of the meeting of creditors, whichever is earlier, and (2) the debtor perform the stated intention with respect to the secured property within 30 days after the first date set for the meeting of creditors.

[13] A question could be posited about how the Debtors were supposed to "perform [their] intention with respect to [the] property" as required in § 521(a)(2)(B), and to "take timely the action specified" in their statement of intent to redeem once their creditors offered to reaffirm the debts and they accepted the offer. However, no issue has been raised as to the Debtors' performance.

9

consummate their stated intentions. *In re Hinson,* 352 B.R. at 50, *Price v. Delaware State Police Federal Credit Union* (*In re Price*), 370 F.3d 362, 372 (3d Cir. 2004). Section 521(a) of the Bankruptcy Code merely requires a debtor to "take steps to act on an intention to either retain or surrender." *Id.* The Debtors in the case at bar did everything in their capacity to perform.[14] They entered into the reaffirmation Agreements in good faith, and the creditors have agreed to give them, despite their projected budget shortfalls, a chance to make the required payments so that they can keep their vehicles.

If the Court refuses to approve the reaffirmation Agreements, they will be rendered unenforceable, even though the Debtor signed them. However, whether the reaffirmation Agreements should be disapproved or deemed enforceable is an issue that is separate and distinct from the issue of whether the Debtors' act of entering into those Agreements satisfied the "performance" requirements of § 362(h) and § 521(a) of the Bankruptcy Code. The Court's approval or disapproval of the Agreements is immaterial in determining compliance with the "performance" requirements. The consequences arising from § 521(d) of the Bankruptcy Code are triggered upon a debtor's failure to enter into the appropriate agreement, not by the court's disapproval of the agreement or by its determination that the agreement is unenforceable.[15]

In this case, the Court finds that the Debtors fully and timely performed their duties under 11 U.S.C § 521(a) and under 11 U.S.C § 362(h) in filing the statement of intention and in signing and filing the reaffirmation Agreement(s) and sending the executed Agreement(s) to the

---

14 "In some circumstances, a reaffirmation agreement entered into by the debtor in good faith may satisfy the requirements of §§ 362(h), 521(a)(6) and 521(d) where the court disapproves the reaffirmation agreement under § 524(c)(6), especially where, as here, the debtor intends to perform under the reaffirmation agreement and where disapproval by the court is beyond the debtor's control." *In re Donald*, 343 B.R. 524, 541 (Bankr. E.D.N.C. 2006).

15 The disclosure required by § 524(k)(3)(J)(i)(7) seems to expressly recognize this eventuality and the continued vitality of the "ride-through" option by advising the debtor that "even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it." *In re Donald*, 343 B.R. at 539.

applicable creditors within the prescribed time limits. As the Court has found that the Debtors fully complied with all of the requirements of § 362(h) and § 521(a) of the Bankruptcy Code, any *ipso facto* clause that may be contained in the original loan documents between the Debtors and the creditors cannot be revived by the newly-created provisions of § 521(d) of the Bankruptcy Code. The bankruptcy filing does not in and of itself trigger an automatic default in the underlying loan documents. *In re Belanger*, 962 F.2d at 348. Once the discharge is granted, the creditors may not repossess the vehicles without violating the discharge injunction unless there is a subsequent payment or insurance default. *In re Riggs*, No. 06-60346, 2006 WL 2990218, at *3 (Bankr. W.D. Mo. Oct. 12, 2006) (declining to approve reaffirmation agreement on undue hardship grounds, finding debtor had fully performed duties under § 521(a) notwithstanding court's ruling that agreement would be disapproved and unenforceable; and holding § 521(d) was not triggered and secured creditor could not repossess collateral based solely upon default under security agreement's *ipso facto* clause; collateral could be repossessed only in event of a payment or insurance default or if creditor's position is or became "significantly impaired."); *In re Quintero*, 2006 WL 1351623.

## CONCLUSION

Because § 521(d) of the Bankruptcy Code is inapplicable to the Debtors' case as a result of the Debtors' complete compliance with §§ 362(h) and 521(a) of the Bankruptcy Code, there are no grounds for the Court to overrule the presumption that the reaffirmation Agreement(s) impose an undue hardship on the Debtors. The Court will not consider the retention of the Debtors' vehicles as a factor in any best interest calculus, as the Debtors will be left in possession of their vehicles regardless of whether the Agreement(s) are approved. The payments under either scenario are the same, and the discharge injunction will continue to protect the

property of the Debtors. The creditors may not repossess the vehicles unless there is a subsequent post-petition payment or insurance default. Even had counsel for the Debtors certified the Agreement(s), the Court would not have concluded that the presumption of undue hardship had been overcome. Therefore, the Debtors' motion will be denied, and the Agreements will not be approved.

      A separate order shall issue.


ENTERED: _____


          /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE


Copies to:

Lynn L. Tavenner, Trustee
Tavenner & Beran, PLC
20 North Eighth Street, Second Floor
Richmond, VA  23219

Robert B. Van Arsdale, Assistant U.S. Trustee
Office of the U.S. Trustee
600 East Main Street, Suite 301
Richmond, VA  23219

Akhter and Farah Husain
11405 Country Oaks Court
Glen Allen, VA  23059

Tom Boyd
BB&T
P.O. Box 1847
Wilson, NC  27894-1847

Nicole Rivas
Toyota Motor Credit Corp.
19001 S. Western Ave.
Torrance, CA  90509

Toyota Motor Credit Corporation
P.O. Box 8026
Cedar Rapids, IA  52408-8026

Kevin A. Lake
Lake & Lake, P.C.
P.O. Box K-53
Richmond, VA  23288